**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STAR INSURANCE COMPANY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIV. ACTION NO. 4:21-cv-00850** |
| **SPITZER INDUSTRIES, INC.,** | § | |
| **PETROGAS MANPOWER** | § | |
| **SOLUTIONS, LLC,** | § | |
| **CURTIS KELLY, INC.** | § | |
| **HARTFORD FIRE INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, Star Insurance Company, and files this Original Complaint for Declaratory Judgment against Defendants, Petrogas Manpower Solutions, LLC, Spitzer Industries, Inc., Curtis Kelly, Inc. and Hartford Fire Insurance Company, and would show the Court the following:

### I.
### PARTIES

1.      Plaintiff Star Insurance Company is a Michigan corporation with its principal place of business located in Farmington Hills, Michigan.

2.      Defendant Petrogas Manpower Solutions, LLC ("Petrogas") is a Texas corporation with its principal place of business in Humble, Texas.  Petrogas may be served with process by serving registered agent, Christian A. Morales, at 21507 Haylee Way, Humble, Texas 77338.

3.      Defendant Spitzer Industries, Inc. ("Spitzer") is a Texas corporation with its principal place of business in Houston, Texas. Defendant Spitzer may be served with process through its registered agent, Stephen A. Lee, at 1770 St. James Place, Suite 625, Houston, Texas 77056.

4.      Defendant Curtis Kelly, Inc. ("Curtis Kelly") is a Texas corporation with its principal place of business in Houston, Texas.  Defendant Curtis Kelly may be served with process through its registered agent, Stephen A. Lee, at 1770 St. James Place, Suite 625, Houston, Texas 77056.

5.      Defendant Hartford Fire Insurance Company ("Hartford") is a Connecticut corporation with its principal place of business in Connecticut.  Defendant Hartford may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## II.
## JURISDICTION AND VENUE

6.      The jurisdiction of this Court exists under 28 U.S.C. §1332 of the Federal Rules of Civil Procedure based upon the diversity of citizenship of Plaintiff and Defendants, and the amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

7.      Venue is properly maintained in this Court because it is the judicial district where a substantial part of the events and omissions giving rise to the claims occurred and in which the underlying state court lawsuit that is the basis of this suit is pending.

## III.
## UNDERLYING FACTS

### A.      Allegations in *Cortez v. Spitzer Industries*

8.      On November 6, 2020, Maritza Navarro Cortes, Individually, As Next Friend of E.R. and A.R., Minors, and As Heir of Decedent Eric Rojas Reyes, and Alfredo Rojas and Maria

Josefina Rojas, Individually and As Heirs of Decedent Eric Rojas Reyes, (collectively "Plaintiffs") filed their Original Petition in Intervention ("Original Petition") in the case styled as *Cortez v. Spitzer Industries, Inc.,* Cause No. 2019-25581, pending in the 269th District Court in Harris County, Texas ("the Underlying Suit").[1]

9.      The Underlying Suit involves a work-related incident on April 4, 2019, which occurred at Spitzer Industries located at 13863 Industrial Road in Houston, Texas.  The facility is owned and operated by Spitzer and its affiliate Curtis Kelly, and handles a broad range of steel fabrication needs used in the energy industry.

10.     The Original Petition alleges that, on the night of April 4, 2019, an employee of Spitzer/Curtis Kelly and an employee of another company, G&C Steel Fabricators, LLC ("G&C"), were in the process of mating a base section (skirt) to the main part of a pressure vessel.  The skirt, weighing approximately 21,559 lbs., was being raised with a 50-ton overhead crane using a 50-foot poly round sling and an 18-foot two legged chain sling to create a basket hitch.  The employee of Spitzer and/or Curtis Kelly "raised the base skirt approximately 4-5 feet utilizing a handheld remote" when its center of gravity shifted and the skirt fell out of the sling.

11.     According to the Original Petition, "OSHA investigated the incident and cited Defendant Spitzer for violating 29 CFR 1910.184(c)(9) for failing to keep personnel clear of the suspended base skirt, and violating 29 CFR 1910.179(n)(3)(i) for failing to properly rig and secure the base skirt before lifting and moving it."

12.     According to the Original Petition, Eric Rojas Reyes ("Reyes"), an employee of Petrogas, was allegedly working on another nearby vessel when the skirt fell from its sling.  The skirt allegedly struck Reyes as it fell, inflicting massive blunt-force trauma and fatal injuries.  At

---

[1] The case was pending prior to the Plaintiffs' Original Petition in Intervention.  On September 28, 2020 the claims against Spitzer and Curtis Kelly were nonsuited without prejudice.  Plaintiffs then filed the Petition in Intervention on November 6, 2020 against the same parties.

the time of the incident, Reyes allegedly was not involved in the securing or the transporting of the skirt.

13.     The Original Petition in Intervention alleges that "Eric Rojas Reyes was not working on the same project as Luis Galeano and Isidro Mendoza and not involved in any way with the rigging or lifting of the base skirt that fell." The Original Petition contains negligence allegations against only Spitzer and Curtis Kelly.

### B.     Indemnity Provision in Contract Between Petrogas and Spitzer

14.     Spitzer entered into a Master Services Agreement ("MSA") with Petrogas on March 26, 2018, wherein Petrogas ("Contractor") is engaged in the business of providing skilled workers ("Assigned Employees") to perform services for Spitzer ("Client") on a temporary basis. The MSA contains the following relevant indemnity provision:

**7.     INDEMNIFICATION**

> **a.         Contractor shall release Client and Client's affiliates and their officers directors, employees, agents, successors and permitted assigns of any liability and shall defend, indemnify and hold harmless Client and Client's affiliates and their officers, directors, employees, agents, successors and permitted assigns (each, a "Client Indemnitee") from and against all claims, demands, causes of action of every kind and character and losses and liabilities, including reasonable attorneys' fees arising out of or resulting from:**
>
>> **i.       bodily injury or death of any Assigned Employee without regard to the negligence of the Client or any other party and without regard to any right to contribution from any insurance maintained by the Client;**
>>
>> **ii.      damage to real or tangible personal property resulting from the willful, fraudulent or negligent acts or omissions of Contractor or Assigned Employees; and**
>>
>> **iii.     Contractor's breach of any representation, warranty or obligation of Contractor set forth in this Agreement,**

including but not limited to, those set forth in Sections 1 and 10; and

i. [sic] **Client shall defend, indemnify and hold harmless Contractor and Contractor's affiliates and their officers, directors, employees, agents, successors and permitted assigns from and against all claims, losses and liabilities, including reasonable attorney's fees arising out of or resulting from Client's breach of any representation, warranty or obligation of Client set forth in this Agreement.**

b. **The parties agrees that this Section 7 constitutes the complete agreement between the parties with respect to indemnification, and each party waives its right to assert any common-law indemnification or contribution claim against the other party.**

d. [sic] **The indemnity obligations of the parties shall survive the termination of this Agreement.**

C.   **Hartford's Demand for Petrogas and its Carrier to Defend and Indemnify Spitzer and Curtis Kelly**

15.   Hartford issued a commercial general liability insurance policy to Spitzer, and is currently defending Spitzer and Curtis Kelly in the Underlying Lawsuit.

16.   On September 18, 2019, Hartford sent a demand to Petrogas, requesting that Petrogas and Petrogas's insurer defend and indemnify Spitzer.

17.   After Petrogas failed to agree to defend and indemnify Spitzer, on November 18, 2019, Spitzer filed its Original Third-Party Petition against Petrogas.

18.   In its Third-Party Petition, Spitzer alleges the following causes of action:  (1) Breach of Contract and (2) Declaratory Judgment.  Spitzer contends that Petrogas owes Spitzer indemnification for all damages related to Plaintiffs' causes of action against Spitzer.  Spitzer also seeks its attorney's fees for bringing the third-party petition, costs of court, as well as any pre-judgment and/or post-judgment interest allowed by law.

19.     On December 16, 2020, Star (through United Specialty Insurance Company ("United Specialty")) issued a coverage denial letter to Spitzer, asserting that the CGL and Excess Policies do not provide insurance coverage to Spitzer.

20.     Subsequently, on December 17, 2020, Hartford sent a letter to Star/United Specialty requesting that it reconsider its coverage position and agrees to defend and indemnify both Spitzer and Curtis Kelly in the Underlying Suit.

## IV.
## THE POLICIES

21.     Petrogas was insured under a commercial general liability ("CGL") insurance policy, bearing policy number USA4219730, with a policy period of May 17, 2018 to May 17, 2019, and policy limits of $1,000,000 per occurrence/$1,000,000 products-completed operations general limit/$1,000,000 personal and advertising injury limit/$2,000,000 general aggregate ("the CGL Policy").  Pursuant to a Quota Share Agreement between United Specialty and Star, Star is the real-party-in-interest for the insurer's liability under the CGL policy because Star agreed to assume and be liable for and pay on behalf of United Specialty 100% of all losses, costs, expenses, and fees under certain United Specialty policies, including the subject CGL insurance policy.  The CGL Policy included the following relevant provisions:

## COVERAGE  A  BODILY  INJURY  AND  PROPERTY  DAMAGE LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. . . .

. . .

**2.      Exclusions**

This insurance does not apply to:

. . .

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**1.**      That the insured would have in the absence of the contract or agreement; or

**2.**      Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**a.**      Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

**b.**      Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

  **e.**  **Employer's Liability**

"Bodily injury" to:

 **(1)**  An "employee" of the "insured" arising out of and in the course of:

   **(a)**  Employment by the "insured"; or

   **(b)**  Performing the duties related to the conduct of the "insured's" business;

 **(2)**  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

. . .

## SECTION V - DEFINITIONS

. . .

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

### OIL AND GAS – SPECIAL EXCLUSIONS AND LIMITATIONS

**The endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABLTIY COVERAGE PART**

**A.**  The following exclusions are added to Section I – Coverages, Coverage A. – Bodily Injury and Property Damage Liability and Coverage B, Personal and Advertising Injury Liability**:**

  This insurance does not apply to:

  . . .

**5.  Punitive, Exemplary Treble Damages or Multipliers of Attorneys' Fees**

Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

. . .

**D.**     The following changes are made to Section **V** – Definitions:

The following definitions are deleted and entirely replaced:

**1.**     Item **5.** "Employee" is deleted in its entirety and replaced by the following:

> **5.**     "Employee" includes a "leased worker", a "temporary worker" and   a "volunteer worker".

**2.**     Item 9.  "Insured contract" is deleted in its entirety and replaced by the following:

> **9.**     "Insured contract" means:
>
> . . .
>
> **f.**     That part of any contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
>
> Paragraph **f.** does not include that part of any contract or agreement:
>
> . . .
>
> **(5)**     That indemnifies another for the sole negligence of such other person or organization.  Sole negligence

is defined for the purposes of this endorsement as negligence attributable to one defendant or tortfeasor to the exclusion of any other defendant or tortfeasor.  Sole negligence applies to all circumstances where liability is either apportioned solely to the defendant or tortfeasor or solely between the defendant or tortfeasor and the injured claimant.

3.      Item **13.** "Occurrence" is deleted in its entirety and replaced with the following:

13.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extend of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

22.     Petrogas also had a commercial excess liability policy, bearing policy number USA4264766, with a policy period of March 26, 2019 to May 17, 2019, and policy limits of $3,000,000 per occurrence and $3,000,000 general aggregate ("the Excess Policy") during the same policy periods as the CGL Policy.  The Excess Policy contains a "Schedule of Underlying Insurance" that lists the Primary Policy for Commercial General Liability insurance coverage. Pursuant to a reinsurance agreement between United Specialty and Star, Star is the real-party-in-interest for the insurer's liability under the Excess Policy.  The Excess Policy also contains the following relevant provisions:

**COMMERCIAL EXCESS LIABILITY COVERAGE PART**

**SECTION I – COVERAGES**

1.      **Insuring Agreements**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", or "personal and advertising injury" to which this insurance applies.  But . . . .

    . . .

    b.    This insurance applies to "bodily injury" and "property damage", or "personal and advertising injury" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place during the policy period of this Coverage Part;

        (2)    The "personal and advertising injury" is caused by an offense arising out of your business that takes place during the policy period of this Coverage Part; and

        (3)    The "bodily injury", "property damage", or "personal and advertising injury" is covered by the "underlying insurance".

. . .

2.      **Exclusions**

. . .

k.      **Sole negligence of another**

If the "underlying insurance" provides coverage for that part of any contract or agreement pertaining to your business under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, coverage is expressly excluded for that part of any such contract or agreement that indemnifies another for the sole negligence of such other person or organization.

. . .

**SECTION IV – DEFINITIONS**

. . .

**12.** "Underlying Insurance" means all insurance whether written on separate policies or separate coverage parts listed in the Schedule of Underlying Insurance, including any renewals or replacements thereof that are not more restrictive and which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance.

\* \* \*

**V.**
**JUSTICIABLE INTEREST**

23.     Defendant Spitzer and Defendant Hartford have demanded a defense and indemnity for Spitzer and Curtis Kelly under the CGL and Excess Policies for the Underlying Lawsuit.  Star is currently providing a defense to Petrogas in the Underlying Lawsuit for the third-party claims by Spitzer under a reservation of rights under the CGL and Excess Policies.

24.     Star seeks a declaration as to its duties and obligations, if any, owed to Spitzer, Curtis Kelly, Petrogas, and Hartford under the CGL and Excess Policies for the Underlying Lawsuit.

25.     An actual controversy therefore exists between the parties hereto pursuant to 28 U.S.C. §2201 et seq., Chapter 37 of the Texas Civil Practice and Remedies Code, and Rule 57 of the Federal Rules of Civil Procedure, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

## VI.
## COUNTS

**A.    Count I – Declaratory Relief –Spitzer and Curtis Kelly are Not Insureds or Additional Insureds under the CGL Policy**

26.    Star alleges and incorporates by reference the allegations found in paragraphs 1 to 25 above.

27.    The CGL policy's insuring agreement states that "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages."

28.    The CGL policy does not list Spitzer or Curtis Kelly as a named insured.  Further, Spitzer and Curtis Kelly do not qualify as an insured under the "Who Is An Insured" section of the CGL Policy.   Moreover, the CGL Policy does not contain any additional insured endorsements.

29.    Because Spitzer and Curtis Kelly are not an insured or additional insured under the CGL Policy, Star is entitled to a declaration that Star has no duty to defend Spitzer or Curtis Kelly for the Underlying Lawsuit under the CGL policy.

**B.    Count II – Declaratory Judgment – The CGL Policy's Contractual Liability Exclusion Precludes Coverage**

30.    Star alleges and incorporates by reference the allegations found in paragraphs 1 to 29 above.

31.    The CGL Policy contains a contractual liability exclusion that precludes coverage for "'bodily injury' . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

32.     At the time of the accident, Petrogas had agreed to assume Spitzer's and Curtis Kelly's liability for bodily injuries to Petrogas's employees in the MSA.

33.     The CGL Policy contractual liability exclusion contains an exception, which states that the exclusion "does not apply to liability assumed by the insured under an 'insured contract'."

34.     The CGL Policy contains an Endorsement for "OIL AND GAS – SPECIAL EXCLUSIONS AND LIMITATIONS."  The Endorsement modifies the definition of "insured contract" to mean "[t]hat part of any contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization."  The Endorsement specifically states that "insured contract" does not "include that part of any contract or agreement . . . "[t]hat indemnifies another for the sole negligence of such other person or organization."

35.     In the Underlying Suit, Plaintiffs seek to recover from Spitzer and Curtis Kelly for the death of Petrogas's employee, Reyes.  Further, the Original Petition alleges negligence solely against Spitzer and Spitzer's affiliate, Curtis Kelly, while it contains no allegations of negligence against Petrogas.

36.     Because the contractual liability exclusion applies to the Underlying Lawsuit, Star is entitled to a declaration that it has no duty to defend or indemnify any party in the Underlying Suit.

## C.      Count III – Declaratory Judgment – The CGL Policy's Employer's Liability Exclusion Precludes Coverage

37.     Star alleges and incorporates by reference the allegations found in paragraphs 1 to 36 above.

38.     The CGL Policy contains an employer's liability exclusion that precludes coverage for "bodily injury" to "[a]n 'employee' of the 'insured' arising out of and in the course of [e]mployment by the insured."

39.     At the time of the accident, Reyes was a Petrogas employee and his injury arose out and occurred in the course of his employment with Petrogas.

40.     The CGL Policy employer's liability exclusion contains an exception, which states that the exclusion "does not apply to liability assumed by the insured under an 'insured contract'."

41.     As discussed above, an "insured contract" under the CGL Policy does not "include that part of any contract or agreement . . . "[t]hat indemnifies another for the sole negligence of such other person or organization."

42.     The Underlying Lawsuit alleges negligence solely against Spitzer and Curtis Kelly, Spitzer's direct affiliate, while it alleges no negligence against Petrogas.

43.     Because the employer's liability exclusion applies to the Underlying Lawsuit, Star is entitled to a declaration that it has no duty to defend or indemnify any party in the Underlying Action.

**D.    Count IV– Declaratory Relief –No Coverage under the Excess Policy**

44.     Star alleges and incorporates by reference the allegations found in paragraphs 1 to 43 above.

45.     The Excess Policy contains certain provisions that must be met before the Excess Policy provides insurance coverage.  According to the Excess Policy insuring agreement, the Excess Policy provides insurance coverage only if "[t]he 'bodily injury', 'property damage', or 'personal and advertising injury' is covered by the 'underlying insurance'."  Here, the Excess Policy lists the CGL Policy issued to Petrogas as "underlying insurance."

46.     As discussed above, the "bodily injury" allegedly sustained by Reyes is not covered by the "underlying insurance" because of the applicability of the contractual liability's and employer's liability exclusions.

47.     Further, the Excess Policy contains an exclusion that "expressly exclude[s]" tort liability assumed in a contract or agreement to the extent "that part of any such contract or agreement that indemnifies another for the sole negligence of such other person or organization."

48.     Because the CGL Policy does not provide insurance coverage for the Underlying Lawsuit and the Excess Policy "expressly excludes" Petrogas's contractual liability for Spitzer's and Curtis Kelly's sole negligence, the Excess Policy cannot provide insurance coverage for the Underlying Lawsuit.  Therefore, Star is entitled to a declaration that the Excess Policy does not provide coverage for the Underlying Lawsuit.

> **E.**     **Count V– Declaratory Relief – Alternatively, the Policies Do Not Provide Coverage for any Exemplary Damages**

49.     Star alleges and incorporates by reference the allegations found in paragraphs 1 to 48 above.

50.     The CGL Policy contains an "Oil and Gas – Special Exclusions and Limitations" endorsement that adds an exclusion that precludes coverage for: "Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party."

51.     The Underlying Plaintiffs seek an award of exemplary damages against Spitzer and Curtis Kelly.

52.     In the alternative, if the CGL Policy provides coverage for the Underlying Lawsuit, the CGL Policy's exemplary damages exclusion would preclude coverage for any award of exemplary damages against Spitzer or Curtis Kelly.

53.     According to the Excess Policy insuring agreement, the Excess Policy provides insurance coverage only if "[t]he 'bodily injury', 'property damage', or 'personal and advertising injury' is covered by the 'underlying insurance'."   Because the CGL Policy does not provide coverage for exemplary damages, the follow-form Excess Policy does not provide coverage either.

54.     Based on the foregoing, Star is entitled to a declaration that the CGL and Excess Policies do not provide coverage for any exemplary award damages against Spitzer or Curtis Kelly in the Underlying Lawsuit.

**VII.**
**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Star Insurance Company prays for judgment as follows:

A.     Star has no duty to defend Petrogas, Spitzer, or Curtis Kelly in the Underlying Lawsuit;

B.     Star has no duty to indemnify Petrogas, Spitzer, or Curtis Kelly for any damages awarded in the Underlying Lawsuit;

C.     Star has no duty to reimburse Hartford for any amounts paid on behalf of Spitzer or Curtis Kelly in the Underlying Lawsuit;

D.     Alternatively, Star has no duty to indemnify for any award of exemplary damages in the Underlying Lawsuit;

E.     Star be awarded its attorneys' fees and costs for prevailing in this lawsuit; and

F.     Star should be awarded such other and further relief, legal or equitable, general or specific, to which Star may show itself to be justly entitled.

Respectfully Submitted,

By: * /s/ Robert J. Witmeyer          *
    **ROBERT J. WITMEYER**
    State Bar No. 24091174
    Email:  Rob.Witmeyer@cooperscully.com

    **COOPER & SCULLY, P.C.**
    900 Jackson Street, Suite 100
    Dallas, Texas 75202
    Telephone:  (214) 712-9500
    Telecopy:   (214) 712-9540

    **ATTORNEYS FOR PLAINTIFF,**
    **STAR INSURANCE COMPANY**